## Shafer v. Chesapeake & Ohio Railway Company.

(Decided February 26, 1929.)

EUGENE R. ATTKISSON and SAMUEL S. BLITZ for appellant.

HUMPHREY, CRAWFORD & MIDDLETON for appellee.

OPINION OF THE COURT BY JUDGE WILLIS—Reversing.

This is a passenger's action against a carrier to recover damages for personal injuries. The Grotto is an organization with several hundred members residing in Indianapolis and vicinity. A special train was chartered to carry the members, including the band in which plaintiff was a player, from Indianapolis to Atlantic City, where a convention was to be held. The special train was handled by the Cleveland, Cincinnati, Chicago & St. Louis Railway Company, commonly known as the Big Four, from Indianapolis to Cincinnati, and it was hauled from Cincinnati to Washington over the line of the Chesapeake & Ohio Railway Company. A part of the train was a steel baggage car fitted up as a buffet car where the passengers could obtain refreshments. The baggage car had a heavy sliding door 6 feet high and 5½ feet wide on each side. It also had small doors in each end. The large doors were kept open in order that the passengers might obtain air and light and observe the scenery. Two heavy bars were attached inside the car across the door openings to protect the passengers, one of which was about 2 feet, and the other about 4 feet, from the floor. Just before reaching Ronceverte, W. Va., the train entered a long tunnel, at which time the doors on both sides were closed, and reopened after passing through the tunnel. In making a stop at a water tank near Ronceverte, the doors came shut with great violence, and one of them caught the arm of Shafer and painfully, perhaps permanently, injured it. He instituted this action against the Big Four and the Chesapeake & Ohio Railway Company to recover damages for the injury. The court required the plaintiff to elect which defendant he would prosecute, and he elected to hold the Chesapeake & Ohio Railway Company. The action thereupon was dismissed as to the Big Four. The case was tried as to the Chesa-

peake & Ohio Railway Company alone, and the jury returned a verdict for the defendant. The lower court refused to grant a new trial and Shafer has appealed. He complains of the instructions given to the jury, and of the refusal to give instructions offered by him.

The testimony for the plaintiff tended to show negligence in the operation of the train directly causing his injuries. The charge in the petition that the door fastenings were defective was not sustained or supported by any evidence. The testimony further showed that plaintiff was using the door and bars across it in the usual and ordinary way, and that no objection had been made or warning given the passengers that any danger was to be anticipated in so doing.

The testimony for defendant showed that the train was not negligently operated, and that the accident resulted from the ordinary movement of the train.

In his original petition the plaintiff alleged, in substance, that while eating a lunch he was standing at one of the door openings, resting his right arm on one of the wooden bars, which was provided for that purpose. He further alleged that the door, which was then open, was caused to close with great force and violence, catching and crushing his arm, and that the door was thus caused to close by an unnecessary, unusual, and violent jerk of the train. The plaintiff took the depositions of some witnesses in Indianapolis and proved that he was sitting near the opening, on the left side, eating his lunch, when he started to arise, that a sudden, unusual, and unnecessarily violent jerk of the train threw him off his balance and brought his right arm within the peril of the closing door and injured it. He then amended his petition, withdrawing the allegation that he was resting his arm on the crossbar, and alleged that he was sitting in front of the car door eating his lunch, when the door closed and caught his arm.

The defendant introduced evidence to show that the position of plaintiff was correctly described in his original petition, and that he was resting his arms on the crossbars and portruding his hands outside the opening directly in the path of the sliding door. There was nothing tending to show that he extended his arm into the path of the door when the danger was imminent, but reliance was placed on the act of the passenger in assuming the posture indicated, even when no danger was ap-

parent or anticipated. The door had not before closed itself, although the train had traveled a great distance and made many stops. The trainmen were frequently in the car and observed the passengers sitting in front of the door resting their arms on the crossbars, but gave no instructions about it, or any warning that it created a condition of peril.

The case for the plaintiff, in its last analysis, depended upon the charge of negligence in the operation of the train. If the train was stopped with a violent, unusual, and unnecessary jerk, so that plaintiff was pitched forward, and caused to be injured by the sliding door, the carrier was liable to him, unless he was guilty of contributory negligence. L. & N. R. Co. v. Spears' Adm'r, 192 Ky. 64, 232 S. W. 60; Millers Creek R. Co. v. Blevins, 181 Ky. 800, 205 S. W. 911; Louisville Ry. Co. v. Osborne, 157 Ky. 341, 163 S. W. 189; Southern Ry. Co. v. Neal, 164 Ky. 121, 175 S. W. 14; Johnson v. L. & N. R. Co., 179 Ky. 81, 200 S. W. 50. The defense was rested upon two propositions. It was denied that the stop was a negligent one, or other than the usual, ordinary, and proper stop of the train. In the first instruction the court submitted to the jury the plaintiff's claim, and the defense thereto based on a denial of the negligent operation of the train. The other defense relied upon was that the plaintiff was guilty of contributory negligence in voluntarily placing his arms on the crossbars. That defense was submitted to the jury by the second instruction, which told the jury to find for the defendant if the plaintiff voluntarily placed his arm across the path of the steel door, and thereby contributed to his injury, and but for which it would not have occurred. There was a direct conflict in the evidence, as we have seen, as to whether the train was negligently operated. The instructions made the case turn, not upon the existence or nonexistence of negligence in the operation of the train, but whether plaintiff had voluntarily rested his arm on the crossbar, or was caused involuntarily to thrust it forward. It has been held that if a passenger protrudes his arm through an open window and is injured by some obstruction from the outside, no recovery can be had. L. & N. R. Co. v. Sickings, 5 Bush, 1, 96 Am. Dec. 320; Clarke's Adm'r v. L. & N. R. Co., 101 Ky. 44, 39 S. W. 840, 18 Ky. Law Rep. 1082, 36 L. R. A. 123. Cf. Cunningham's Adm'r v. Central Ky. Traction Co., 156 Ky. 30, 160 S. W. 767, 49 L. R. A. (N. S.) 135.

It has been held, also, in Bringer v. L. & N. R. Co., 72 S. W. 783, 24 Ky. Law Rep. 1973, that a passenger may not recover for an injury to his thumb caused by some one closing a door upon it. In such cases the injury did not result from negligence in the operation of the train, or from defects in the equipment provided for the use of passengers. In C., N. O. & T. P. R. Co. v. Lorton, 110 S. W. 857, 33 Ky. Law Rep. 689, a passenger recovered a judgment for damages sustained by reason of a window with defective fastenings falling upon her hand. It was held that it was the duty of the carrier to keep and maintain its passenger coaches, including the windows and doors, in a reasonably safe condition for the security, convenience, and comfort of passengers; and a failure on its part to discharge that duty rendered it liable in damages to an injured passenger, unless the passenger was guilty of contributory negligence. The liability of the company was rested upon its negligence, and it was held that the passenger was not guilty of contributory negligence in resting her arm upon the window sill, unless she had reason to believe the window would fall. Her knowledge that it had fallen twice did not necessarily preclude her right to recovery. It is obvious that a passenger would not be negligent in resting his arm at a place which was so convenient for the purpose that it constituted a direct invitation so to use it. The cross-pieces in the present case were provided for the use and protection of passengers, and negligence on their part could not be predicated upon the circumstances that they rested their arms thereon, when they had no notice or knowledge of danger in so doing.

Again, in York v. Cincinnati, N. O. & T. P. R. Co., 216 Ky. 825, 288 S. W. 750, it appeared that a passenger was injured by a window falling on his elbow. No negligence on the part of the carrier was shown, but the plaintiff relied upon the doctrine of res ipsa loquitur. The court held the carrier was not liable and answered the argument advanced for appellant by a reference to the opinion in Chadwick v. L. & N. Co., 213 Ky. 831, 281 S. W. 1018, 45 A. L. R. 1537, where it was held that, in the absence of proof of negligence on the part of the carrier, the mere fact of injury to a passenger by a falling window did not make out a case of liability. The doctrine there invoked applies only where instrumentalities causing injury are exclusively within the control of the car-

rier, and as windows may be and often are operated by passengers, the burden is upon the passenger to show negligence when claiming damages for an injury caused by a falling window. As the plaintiff had failed to meet the burden which rested upon him to show negligence causing the window to fall, no basis of liability was established. It was expressly stated in the opinion that there were no defects in the fastenings of the window, and no negligence in the operation of the train. That case does not hold or intimate that, where there is evidence of negligence in the operation of the train, the mere fact that the passenger used the window sill to rest his arm in a customary way would preclude recovery of damages for an injury caused by negligence in the operation of the train. In Chadwick v. L. & N. R. Co., supra, it was held that if the train or car was being properly operated, so that there was no jerk or movement of the train calculated to cause the window to fall, and there was no defect in the window, the passenger could not recover. The Lorton case was discussed and its doctrine expressly reaffirmed. None of the cases were based upon any assumption or holding that it was contributory negligence for a passenger to use as an arm rest places obviously adapted to such use. The proof in this case shows no contributory negligence on the part of the plaintiff, unless the fact that such negligence was inferable from the use made by Shafer of the crossbars on the car door. In the absence of warning or knowledge that danger lurked in the situation, we see no ground or reason for holding that such use by the passenger of the facilities provided constituted any evidence of contributory negligence. L. & N. R. Co. v. Campbell (Ky.) 122 S. W. 848; South Covington & C. St. Ry. Co. v. McCleave, 38 S. W. 1055, 18 Ky. Law Rep. 1036; Ill. Cent. R. Co. v. Crady, 69 S. W. 706, 24 Ky. Law Rep. 643.

In view of the evidence, the court erred in giving the second instruction, which excused defendant from liability, if plaintiff voluntarily rested his arms on the crossbar, even though it was found to have been negligent under the first instruction.

The appellant insists that he was entitled to other instructions offered by him, and, while they may have been correct as legal propositions (Louisville Ry. Co. v. Osborne, 157 Ky. 341, 163 S. W. 189, Second Appeal, 171 Ky. 348, 188 S. W. 419), yet where it is practicable to do

so with reasonable exactness, concrete instructions are to be preferred (L. & N. R. Co. v. King's Adm'r, 131 Ky. 347, 115 S. W. 196; L. & N. R. Co. v. McCoy, 177 Ky. 420, 197 S. W. 801; Louisville Gas & Elec. Co. v. Beaucond, 188 Ky. 739, 224 S. W. 179).

The important issue to be determined in this case is whether there was a sudden, unusual, violent, and unnecessary jerk of the train which caused the door to close with violence resulting in the plaintiff's injury. The evidence was in conflict on the vital point in issue. That issue should be submitted to the jury without the confusion of incidental or collateral questions. On another trial the word "involuntarily" should be omitted from the first, and the second instruction should not be given.

Appellee argues, however, that the second instruction presented one of its theories, and that it was entitled to have all of its theories of the case submitted to the jury. It is quite true that each party is entitled to have his theory of the case, if it is supported by evidence and is sound in law, presented by appropriate instructions (Consolidation Coal Co. v. Spradlin, 173 Ky. 232, 190 S. W. 1069, L. R. A. 1917D, 283; Chicago, etc., R. Co. v. Stahr, 184 Ky. 532, 212 S. W. 115; Stearns Coal & L. Co. v. Williams, 171 Ky. 48, 186 S. W. 931); but he is not entitled to have presented to the jury a direction to find for him upon a state of facts that does not constitute a valid defense to the cause of action. The theory of the defense in this case which had support in the evidence, and which was justified by the law, was that the train stopped in the usual and ordinary way without negligence. That theory of defense was succinctly submitted to the jury by the first instruction. There was no evidence from which contributory negligence on the part of the passenger could be properly inferred. All of the testimony showed that the passenger was acting on the occasion in question just as plaintiff and the other passengers had acted in the presence and with the acquiescence of the railway employes. He was not advised of any possible danger, nor admonished to cease from using the facilities provided, and the railroad company may not defend against its negligence in the operation of the train, on the ground that it may have proven harmless if the passenger had not been in a particular position at a particular moment, although passengers were known and expected to be in that very position. The position

of the passenger in the instant case was a mere incident or condition, and not a contributory cause, of the injury he sustained. City of Providence v. Young (Ky.) 12 S. W. (2d) —, decided February 5, 1929; Callihan's Adm'r v. C. & O. Ry. Co., 203 Ky. 782, 263 S. W. 339; Pacific Mutual Life Ins. Co. v. Cash, 224 Ky. 292, 6 S. W. (2d) 239; Dunn v. Central State Hospital, 197 Ky. 807, 248 S. W. 216; L. & N. R. Co. v. Napier, 223 Ky. 417, 3 S. W. (2d) 1070.

For the errors indicated in the instructions, the judgment will have to be reversed and a new trial awarded.

Judgment reversed, for a new trial not inconsistent with this opinion.