M. L. Zahniser, H. B. Zahniser and John R. Rush, trading as the East End Oil Company, and Dr. J. C. Russell, S. N. Russell and Mary E. Rush, Appellants, *v.* The Pennsylvania Torpedo Company, Limited.

*Negligence—Res ipso loquitur—Presumption—Evidence.*

The cases in which a plaintiff is entitled to have the jury draw the inference of negligence from the happening of the injury alone are ordinarily limited to those of an absolute duty, or an obligation practically amounting to that of an insurer. Cases not coming under one or both of these heads must be those in which the circumstances are free from dispute and show, not only that they were under the exclusive control of the defendant, but that in the ordinary course of experience no such result follows as that complained of, and the injury could not be attributed to any other cause.

In an action to recover damages for injuries to an oil well caused by the alleged negligence of the defendant's workman in shooting the well, plaintiff alleged that the well had been shot at a point some 200 feet too far above the bottom of the well, and that this resulted from defendant's workman failing to run a measuring line down to the torpedo after it had been lowered into the well, to make sure of its exact position before firing it. There was no evidence that it was customary or proper to do so, or that the workman did not make the additional test with the measuring line. No affirmative evidence was given of any negligent act of the defendant, either of omission or commission, but plaintiff contended that the inference of negligence should be drawn from the happening of the injury alone. *Held,* (1) that this was not a case where the circumstances made the happening of the accident itself sufficient evidence of negligence; (2) that a nonsuit was properly entered.

Argued Oct. 22, 1898.   Appeal, No. 197, Oct. T., 1898, by plaintiffs, from order of C. P. Butler Co., Sept. T., 1897, No. 27, refusing to take off nonsuit.   Before GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Trespass for injuries to an oil well.

On a motion to take off a compulsory nonsuit, GREER, P. J., filed the following opinion :

This is a motion to take off a compulsory nonsuit, entered by the court, on which an argument was heard March 11, 1898. The plaintiffs allege that the defendant company, whom they employed to shoot an oil well, did it negligently and shot it at the wrong place, thereby impairing and destroying it, and that they are seriously injured, and bring this action to recover damages to compensate them for their loss.   The proof shows that immediately before the agent of the defendant company put in the shot he had the bailer run to the bottom of the hole which indicated that it was clear of obstructions; that he then put in the shell and loaded it with nitroglycerine, lowered it in the well and fired it, the plaintiffs claiming 200 feet or more above where they had directed it to be fired.   No one knows exactly where it was exploded, but the testimony would indicate over 1,000 feet down and some 200 feet or more above the point desired.

This is an action for damages on account of negligence, and the law makes it the duty of the plaintiffs to prove negligence. In this I am of opinion the plaintiffs utterly failed, and for that reason it was taken from the jury and a compulsory nonsuit entered.

The plaintiffs allege it was the duty of the shooter to run a measuring line and discover the actual location of the shot when fired.   This may be true, but they offered no proof to show he did not do so.   When he fired the shot all spectators left the ground, to get out of danger; the shooter was alone and no one knows what he did.   Since that time he has met his death at this most hazardous business, and was not in court to inform the jury what he did.   If he ran a measuring line we have a right to presume he fired the shot at the point desired and fired it properly.   We have no proof whatever to the contrary.   The

hole was clear when the bailer passed down and up, and he would have been justified in believing it was still clear for the short time in which he was preparing and lowering the shell, and I think that his duty did not require him to take any further precautions. However, we have no evidence that he did not take all the precaution known to the business or in his power; to hold otherwise would be upon presumption only.

Now, March 19, 1898, on due consideration, the motion to take off the nonsuit is refused and the prothonotary is directed to enter judgment for the defendant.

*Error assigned* was in refusing to take off nonsuit.

*J. M. Galbreath,* with him *John M. Thompson, W. C. Thompson* and *J. B. McJunkin,* for appellants.—This case belongs to a class of cases in which the presumption of negligence arises out of the happening of the event causing the injury or damage. The maxim res ipsa loquitur applies: Shafer v. Lacock, Hawthorn & Co., 168 Pa. 497; Jaggard on Torts, sec. 265.

*T. C. Campbell,* with him *James W. Lee* and *John B. Chapman,* for appellee.—The maxim res ipsa loquitur has no application in the case of an accident which is claimed to have happened through the negligence of the defendant, where the cause of the accident is known to a certainty: Long v. Penna. R. Co., 147 Pa. 343; Fleming v. Pittsburg, etc., Ry. Co., 158 Pa. 130; Buck v. Penna. R. Co., 150 Pa. 170; Stearns v. Ontario Spinning Co., 184 Pa. 519; Penna. R. Co. v. Barnett, 59 Pa. 259; McKee v. Bidwell, 74 Pa. 218; Baker v. Fehr, 97 Pa. 70; Phila. & Reading R. R. Co. v. Heil, 5 W. N. C. 91; Goshorn v. Smith, 92 Pa. 435; Penna. R. Co. v. Fries, 87 Pa. 234; Allison Mfg. Co. v. McCormick, 118 Pa. 519.

OPINION BY MR. JUSTICE MITCHELL, March 20, 1899:

The learned judge below entered a nonsuit on the ground that no negligence had been shown on the part of defendant, and it is conceded here by the appellant that no affirmative evidence was given of any negligent act either of omission or commission. But the argument is that the result showed that the torpedo had not been lowered to the proper place, but had been

shot at a point some 200 feet too far up above the bottom of the well, and that that could only have happened by the negligence of defendant's workman, Brown. In other words, appellant claims that under the circumstances it was entitled to have the jury draw the inference of negligence from the happening of the injury alone.

That such inference may sometimes be drawn is true, but the cases are exceptional. The maxim res ipsa loquitur is itself the expression of an exception to the general rule that negligence is not to be inferred but to be affirmatively proved. The ordinary application of the maxim is limited to cases of an absolute duty, or an obligation practically amounting to that of an insurer. Cases not coming under one or both of these heads must be those in which the circumstances are free from dispute and show, not only that they were under the exclusive control of the defendant, but that in the ordinary course of experience no such result follows as that complained of. It is sometimes said that the mere happening of an accident in this class of cases raises a presumption of negligence, but this is hardly accurate. Negligence is never presumed. If it were, it would be the duty of the court, in the absence of exculpatory evidence by the defendant, to direct a verdict for the plaintiff, whereas in these cases the question is for the jury. The accurate statement of the law is not that negligence is presumed but that the circumstances amount to evidence from which it may be inferred by the jury.

In cases where the duty is not absolute, like that of a common carrier to exercise the highest care and skill in regard to the safety of a passenger who has committed himself to its charge, but arises in the ordinary course of business, it is essential that it shall appear that the transaction in which the accident occurred was in the exclusive management of the defendant, and all the elements of the occurrence within his control, and that the result was so far out of the usual course that there is no fair inference that it could have been produced by any other cause than negligence. If there is any other cause apparent to which the injury may with equal fairness be attributed, the inference of negligence cannot be drawn. In the case chiefly relied on by the appellant, Shafer v. Lacock, Hawthorn & Co., 168 Pa. 497, there was evidence, not only that the

fire arose from the use of a fire pot by the roofers, but of declarations by the roofers themselves that it was caused by their act.

Tried by the foregoing tests the plaintiff's case failed in several particulars. There was no evidence that the result complained of was so uncommon as to be of itself evidence of negligence. It may be conceded, as appellant argues, that the blocking up of a well by the falling in of loosened materials along its sides is not the usual result of shooting it with a torpedo, or the practice would soon cease. But it might be far from usual and yet not so entirely unusual as to be evidence per se of negligence. The inference was not one to be drawn by jurymen from their experience in the ordinary walks of life, but to be founded on evidence from persons familiar with that particular business. There was no such evidence in the case.

So far as any specific act of negligence is charged, it is the failure of Brown, the defendant's employee, to run the measuring line down to the torpedo after it was lowered into the well, and make sure of its exact position before firing it. There was no evidence that it was customary or proper to do so. The business is intrinsically dangerous. Brown himself was killed in the prosecution of it shortly after this occurrence. So far as there is any evidence as to what he did, it shows care on his part. He ran the bailer down to the bottom and found the well-clear; he then put in the shell, loaded it and lowered it till it stopped. Plaintiff's own witness, Russell, says that if the hole was all right the shell should have gone to the bottom; the operation had reached the critical point of danger from the firing, and all the parties present retired from the derrick except Brown; there was no evidence that it was customary or proper for him to prolong the danger period by running the line down to see if anything had fallen in and clogged the hole in the brief interval between testing it with the bailer and lowering the shell. But an even more conclusive point is made by the learned judge below, that there is no evidence that Brown did not make this additional test with the measuring line. The cause of the accident was largely conjectural, and it may as well have arisen from the loose and crumbling nature of the well walls, as from defendant's negligence. If the evidence had been submitted to the jury they could only have

guessed at a verdict. It was not a case where the circumstances made the happening of the accident itself sufficient evidence of negligence.

Judgment affirmed.