Semensky, Appellant, *v.* Pennsylvania Railroad Company et al.

Argued October 25, 1944. Before KELLER, P. J., BALDRIGE, RHODES, HIRT, RENO and JAMES, JJ.

*Abraham E. Freedman,* with him *Freedman & Goldstein, Paul M. Goldstein* and *Charles Lakatos,* for appellant.

*Philip Price,* with him *Scott Seddon* and *Barnes, Dechert, Price & Smith,* for appellee.

OPINION BY RENO, J., January 25, 1945:

In this action of trespass, the plaintiff secured a verdict for personal injuries sustained by him in an accident which occurred while moving a railroad car on the premises of his employer. The verdict requires that the evidence, and all the inferences that may be drawn from it, be considered in the light most favorable to him on his appeal from an order entering judgment n. o. v. for defendant.

Plaintiff was employed by Max Bailis & Sons, scrap metal dealers with a yard at Delaware Avenue and Reed Street in Philadelphia, as a laborer, driving a delivery truck and loading scrap steel on gondola cars. A rail-

road siding leading into Bailis' yard from Delaware Avenue traversed an incline from the street to a level piece of ground where cars were loaded by means of a magnetic crane. After the cars were filled it was the practice of Bailis' employes to fasten to them a cable connected with a winch mounted on a motor truck, and by this means to pull them to the top of the incline so that they could coast down toward Delaware Avenue preparatory to being removed from the premises. During this operation it was customary for one man to ride on the loaded car and to stop it in the middle of the grade with the hand brake before it reached the street.

On June 2, 1941, plaintiff was ordered to assist in moving a loaded car away from the crane and he took the brakeman's position on the front of the car. Plaintiff had braked loaded cars a dozen times before and had always been able to stop them manually without the aid of a brake club to obtain leverage. On this occasion, however, plaintiff turned the brake wheel four times without feeling the gradually increasing resistance that was normally present, and after four revolutions the wheel refused to turn further, although the brakes on the car had not begun to take effect. The car collided with the rear end of the truck, which extended across the tracks, and as plaintiff was unable to clamber to safety after he realized his apparent danger, his left foot was caught between the two and injured.

The tracks leading to Bailis' yard were those of the Belt Line, a company operating no engines. When cars were needed in Bailis' business a request was telephoned to the Pennsylvania Railroad Company, and Pennsylvania engines moved them over the Belt Line tracks onto Bailis' siding, and removed them after they were loaded. The cars would be from the Pennsylvania and other systems, but all were moved in and out over the Belt Line by Pennsylvania engines. The records of Bailis' foreman showed that there were three cars in

the yard on the day of the accident, all of which had been placed there a day or two previously by defendant's engines. It was not known, however, from which railroad the cars had originated or over which roads they were to be shipped when loaded, and the precise car involved in the accident was not identified.

The first point argued here related to the duty of inspection owed by defendant, as the supplier of the car, to Bailis' employes. The arguments raise an interesting question of law which, so far as our research has disclosed, has not been decided by our courts in circumstances resembling those presented by this record. However, because of our views upon other and equally controlling phases of the case, which preclude recovery by plaintiff, it is not necessary that the first point receive discussion and decision. Assuming that plaintiff's position upon that question is sustainable in principle, he nevertheless is not, for reasons we shall state, entitled to judgment upon his verdict.

Assuming, but not deciding, that defendant had a duty to inspect the cars hauled by it over the Belt Line, plaintiff had the burden of proving negligence by showing that at the time the car upon which he was injured was delivered to Bailis there existed a defect in the brake mechanism which could have been discovered upon a reasonable inspection. Cf. *King v. Miller Coal Co.*, 275 Pa. 369, 119 A. 481. The jury could fairly infer that at the time of the accident there was some defect in the brake, for it did not function as other brakes had on prior occasions when operated by plaintiff. There is no testimony to show, however, that the defect existed at the time the car was turned over to Bailis by defendant, and since the car was in Bailis' yard for one or two days before it was loaded the mechanical breakdown may have occurred after delivery. More important, there was nothing to show the nature of the defect, and whether it could have been discovered by a reasonable inspection of the car. Even though the brake had been

out of order when the car was delivered, defendant would not be answerable for any resulting injuries if it could not have learned of the condition by making a reasonable examination of the equipment, and plaintiff has therefore failed to produce evidence sufficient to carry the burden incumbent upon him. *Desibia v. Monongahela Railway Co.*, 262 Pa. 227, 105 A. 55. Cf. *P. & R. R. Co. v. Hughes*, 119 Pa. 301, 13 A. 286; *Dickerson v. Cent. R. R. of N. J.*, 189 Pa. 567, 42 A. 299.

Plaintiff attempts to justify his verdict by invoking the principle that where the instrumentality which causes the injury is shown to be under the control and management of defendant, and if the accident is one which ordinarily would not occur if those having the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from a want of care. This principle is not applicable where the defendant has not exclusive control of the injury-causing device at the time of the accident. *Zahniser v. Penna. Torpedo Co.*, 190 Pa. 350, 42 A. 707; *Fitzpatrick v. Penfield*, 267 Pa. 564, 109 A. 653; *Rose v. Adelphia Hotel*, 300 Pa. 1, 149 A. 644. Plaintiff concedes, as indeed he must, that defendant did not have exclusive control of the car at the time he was injured, for defendant in fact had exercised no dominion over it after it was delivered at Bailis' siding a day or two prior to the accident. In any event the rule cannot aid plaintiff, for his case still lacks a necessary element of proof. As was said in *Bryan v. Barber Asphalt Co.*, 289 Pa. 123, 127, 137 A. 169: "It is not enough that, as here, 'the thing speaks for itself' so far as tending to show that the [car] must have been weak or defective; the application of the principle, if it is to have any bearing, must go further and lead necessarily to the additional conclusion that defendant had, or, by the exercise of reasonable diligence, would have had, knowledge of the weakness or defect, in order

to raise a duty to replace or repair, without which there could be no neglect upon which to base a recovery. On this essential point, the 'thing' does not 'speak' at all."

Judgment affirmed.